## HANOVIA CHEMICAL & MFG. CO. v. DAVID BUTTRICK CO.
### No. 310.

District Court, D. Massachusetts.
July 2, 1941.

Harrison F. Lyman, of Boston, Mass., for plaintiff.

Robert L. Thompson and Roberts, Cushman & Woodberry, all of Boston, Mass., Leonard A. Watson, C. V. Johnson, E. R. Helferich, and Watson, Bristol, Johnson & Leavenworth, all of New York City, for defendant.

FORD, District Judge.

This is a patent infringement suit seeking an injunction and accounting for profits and damages. The defenses are invalidity and noninfringement.

The plaintiff is a New Jersey corporation and manufacturer of scientific equipment, including mercury vapor lamps, with a usual place of business in Newark, and the defendant is a Massachusetts corporation operating a dairy in Arlington, Massachusetts. The plaintiff, a manufacturer of ultra-violet ray lamps, is, by assignment, admittedly the owner of United States patent No. 2,001,555, issued May 14, 1935, to Dr. Henning A. Trebler. This patent is designated as a device for the irradiation of milk with ultra-violet rays.

The defendant is alleged, in irradiating milk, to have used a device embodying the invention owned by the plaintiff. This device was manufactured by the National Carbon Company, Inc., of New York (hereafter called the Carbon Company) and known as "Type YN Milk Irradiator." The latter corporation, manufacturer of lamps and arc carbons, is defending the suit.

### The Facts.

In 1924, Dr. Harry Steenbock, professor of bio-chemistry at the University of Wisconsin, demonstrated that certain food products developed antirachitic characteristics when exposed to ultra-violet irradiation. Milk is one of the substances. Dr. Steenbock made application for a patent for treating edible products with ultra-violet rays on June 30, 1924, and the patent (No. 1,680,818) was issued August 14, 1928. This patent taught that Vitamin D could be introduced into milk by irradiating the latter with ultra-violet light. Steenbock found that milk itself contained pro-vitamins and these, activated by irradiation, are transformed into vitamin D. The Wisconsin Alumni Research Foundation is the owner and licensor under this patent. As owner and licensor, this Foundation permits no one to sell, or a dairy to use, a milk irradiator until it is approved by dairy experts of the Foundation as capable of producing milk, not only of sufficient vitamin potency, but also of a flavor acceptable to the public. Expert dairymen at the Foundation together with flavor experts from other American universities make the final decision on potency (vitamin D units) and flavor before a license is issued. Periodical tests are made during each year of licensed milk irradiating devices for the purpose of determining that at all times the licensed machines produce milk of proper vitamin D potency and flavor. Proper potency is determined by means of a rat test which it is not necessary to discuss in detail in this opinion. The Foundation

maintains a staff of experts for the determination of the cause of flavor troubles which occur at times in all irradiating devices which have been approved by it.

The first apparatus used commercially in the United States for milk irradiation was developed by Dr. George C. Supplee, now director of research for the biological laboratories of the Borden Milk Company, large manufacturers and distributors of milk products in the United States. Dr. Supplee's experiments in irradiating milk began late in 1924 and in 1927 the first commercial irradiation of milk was started. This took place at the Dry Milk Company, Inc., of New York, a producer of dry milk. This company was acquired by the Borden Company early in 1929. In the first commercial installation for irradiating milk at the Dry Milk Company, with which Dr. Supplee was connected, the milk was irradiated in the form of liquid milk and sold in the form of dry milk. The irradiation was done in what was known as a cooler assembly which involved the flow of milk over corrugated tubular coolers of standard construction, with arc lamps positioned before the film of milk during its course of travel over the surface of the cooler. The milk was supplied to the top of the irradiator through a standard feed trough distributor and dropped from the latter onto the irradiating surface through two parallel rows of holes at the bottom of the feed trough. The parallel outlets were so positioned as to permit a flow of film on both sides of the irradiating surface. The milk flowed down the corrugations of the cooler, after a continuous film had been formed, for a distance of about five feet and collected in a trough at the bottom and from there is was redistributed. The milk in this device was in a continuous sheet near the bottom of the flow surface and for some distance above the bottom. This apparatus, exclusive of lamps, is shown in Figs. 1 and 2 of United States patent No. 1,817,936, issued to George C. Supplee, August 11, 1931, on application filed June 2, 1926.

The Borden Company started commercial irradiation and distribution of fluid milk for the general fluid market in Detroit, Michigan, in January, 1933.

On September 21, 1933, Drs. Supplee and Merrill J. Dorcas filed an application for a patent relating to a device and method for irradiating milk which involved particularly a method for producing smooth films over the flow surface. This patent was issued May 28, 1940 (No. 2,202,610). The original apparatus on which the films described in the patent were formed (defendant's exhibit 1) was produced in court at the trial. This apparatus was made early in 1933, between late January and March 1st, on an order of Dr. Supplee dated February 16, 1933. This apparatus was put in operation about a week after its receipt from the maker (February 21, 1933). It was operated frequently thereafter. The general purpose of this patent was to obtain uniform smooth flowing films over a flat surface that could be varied in the amount of milk delivered per horizontal inch of film. The patentee stated: "In the irradiating liquids it is important that the effect of the radiant energy be uniformly produced throughout the liquid and that this effect be produced to the proper degree. * * * It is equally desirable that no substantial portion of the milk be excessively exposed to the ultra-violet energy because such excessive exposure would produce undesirable changes that would not be counteracted by dilution with unexposed milk. Examples of such undesirable changes are the formation of undesirable flavor or odor * * *." Dr. Supplee obtained from the apparatus described in this patent a "smooth flowing film of mirror-like surface" horizontally and vertically continuous. This patent shows a two-inch pipe-form distributing chamber provided with a narrow slot. The distributing chamber is fed through the end. The slot is on the side of the distributing chamber. The fluid to be irradiated flows from the distributing chamber through the slot onto and down a smooth flow-board. In addition to the operations of the patentees themselves at the Borden Company, others used the apparatus described in work that involved flowing films of milk at different volume capacities with exposure of the films to ultra-violet rays. The samples obtained were tested for vitamin D potency.

In March or April, 1933, Dr. C. E. Greider of the National Carbon Company commenced to use the original apparatus in work that involved the determination of the transmission of different wave lengths or bands of wave lengths of ultra-violet irradiation transmitted through flowing films of different capacities. On or about November 2, 1933, a Mr. H. P. Fell, Assistant Chief Engineer of the Borden Com-

648

pany and formerly of the Dry Milk Company, had a detailed drawing made of another unit of the general type of construction shown in this patent. This drawing was made at the Borden Company engineering department, New York City, New York, for experimentation on the flow of milk. The drawing showed the presence of a new element, a vertical piece of metal projecting from the top level of the distributing trough for the purpose of avoiding or suppressing whirls or eddies in the film as it fed into the slot of the trough before proceeding down the flow-board. Dr. Supplee had proposed this new element. This element is commonly called a baffle, a plate, a wall, or screen used to check or regulate the flow of liquids. The baffle extended below the slot of the opening through which the milk flowed from the trough. The flow-board of this device was 20½ inches long and 18½ inches wide and the top edge of the flow-board, which formed a weir between the baffle and the flow-board, was ⅛ of an inch thick. The baffle was also ⅛ of an inch in thickness. A device similar to that in the drawing was constructed and tests run on it in New York State, on December 12, 1933. One of the purposes of the baffle in this device, the evidence showed, was to take out any turbulence from the milk, before it flowed through the slot. The evidence further showed that this device produced a smooth film of milk covering the full width of the flow-board with no observable foam or foreign matter on the latter. In order to regulate the flow of milk, this device contained a removable and adjustable plate in front of the baffle for the purpose of increasing or decreasing the slot through which the milk flowed onto the board. No patent application was filed on the apparatus shown in this drawing.

Subsequent to this time, the Borden Company was instrumental in having a device constructed embodying this trough and baffle arrangement shown in the drawing made at the instance of Fell. It was built by the Creamery Package Manufacturing Company, of Chicago, Illinois. This device was operated commercially at Norwich, New York, at one of the plants of the Borden Company. In 1933, the Creamery Package Company began the sale of a cylindrical type irradiator referred to as the "C.P." irradiator which was used commercially. One of the first of these was sold to, and used commercially by, the Producers Creamery Company, of Benton Harbor, Michigan, in May, 1933, and is still in use. This device consists of an irradiator cylinder down the smooth sides of which the milk flows through small holes in the bottom of a trough at the top. The evidence showed that these machines are still producing irradiated milk of satisfactory potency and flavor.

The device manufactured by the Creamery Package Manufacturing Company has been approved by the Wisconsin Research Foundation both for potency and flavor. Also, the flavor of the milk produced by this device has been consistently acceptable since its manufacture. It has been submitted to frequent tests by the Foundation and the flavor found good. The cooler type of irradiator developed by Dr. Supplee is also in use today and was the first milk irradiator approved by the Wisconsin Foundation. This type of irradiator, the evidence showed, also produces milk of satisfactory potency and film. They were both successful commercially.

On November 1, 1933, the Creamery Package Manufacturing Company published a pamphlet describing the type of equipment manufactured by them that has just been referred to.

Dr. Henning A. Trebler, of Baltimore, Maryland, patentee of the patent in suit, from 1930 to the present day, has been employed by the National Dairy Products Company, manufacturers of dairy products, as a commercial engineer and trouble shooter in the company's various plants. In 1931, Dr. Trebler commenced looking into the existing methods for irradiating milk and immediately came upon the two commercial methods on the market that have been described as the Supplee washboard and Creamery Package types of irradiators. In 1933, he made tests of these two devices and, according to him, he found the irradiated milk produced by them unsatisfactory as to flavor. His inspection of the Creamery Package type, made early in 1933, took place at Benton Harbor, Michigan, where, it has been pointed out, they were first installed. Dr. Trebler stated the off-flavor was occasioned because the film of milk over the flow-board was too thin and that thinness of film occurred in the Creamery Package device when the holes became clogged with milk fat, which in turn caused an irregular flow down the board. It may be stated, at this point, that the evidence did not show that any clogging

of the holes in the Creamery Package device had any material effect on the smoothness of the flow. The evidence by no means showed what Dr. Trebler claimed in this connection to be the fact. The evidence also showed it would be a very simple matter to remove any accumulation of fat from the holes through which the milk flowed, if such an occurrence took place.

Other types of apparatus were investigated by Dr. Trebler. One constructed by the Recklinghausen Ultra-Violet Corporation and another by Professor O'Brien of the University of Rochester, New York, which disclosed treatment of milk through a water curtain.

Finally, Dr. Trebler, according to his testimony, determined that in all the apparatus he investigated, there was one defect common to all, namely, that thin films were obtained and the latter were likely to be over-irradiated, thereby causing poor flavor. This led him, he said, to try to obtain as uniform a film as possible. He testified he found a real uniform flow would correct the evil of bad flavor. However, Dr. Trebler was wrong in his statement that the previous devices generally produced irradiated milk of bad flavor. Dr. Henry T. Scott, Director of Biological Research for the Wisconsin Alumni Research Foundation stated, and I find it to be a fact, the Supplee, Creamery Package, and O'Brien devices, in use before Trebler's were capable of producing and did produce milk of satisfactory flavor. Further, Dr. Scott's unbiased evidence showed that commercial devices approved by the Foundation, the Supplee, Creamery Package, and Hanovia devices, have flavor troubles periodically, due to improper irradiation and other causes, and these are corrected by the Foundation experts after inspection, and adjustment. Flavor troubles which appear sporadically cannot be completely eliminated in milk irradiating machines. Things go wrong in this activity as in others. In fact, the plaintiff, itself, through its expert, admitted that flavor complaints from users of the plaintiff's devices are not unusual. Dr. Trebler stated that this problem of flavor led to the construction of the simple device of his patent. As he expressed it, "a very simple but very effective design which I finally adopted and which is shown in the patent in suit". Dr. Trebler at no time claimed he discovered the fact that over-irradiation destroyed flavor. As a matter of fact, this fact was discovered very early by Dr. Steenbock who recognized at the outset that the velocity of too thin a film over the flow-board would be lowered owing to the adhesion of the milk to the surface of the board, thus subjecting the milk to too much irradiation. He said so in his patent dated August 14, 1928 (No. 1,680,818). Dr. Supplee also taught this.

The patentee, sometime in November, 1933, submitted a sketch of his device to the plaintiff in the present suit. Later, in January, 1934, the plaintiff constructed an apparatus in accordance with a blueprint made on January 11, 1934, from this sketch. This apparatus was manufactured and shipped to Rochester, New York, where it was put in use in one of the plants of the National Dairy Products Company. Dr. Trebler applied for the patent in suit March 15, 1934, and the patent was issued May 14, 1935.

This patent, as Dr. Trebler states in the specification, is for a device for flowing milk or other fluids over inclined or vertical surfaces for the purpose of irradiating them with ultra-violet or electro-magnetic rays. It is a patent for a flow device.

Claims 1 and 4 are in suit. Claim 1 is as follows: "1. In an apparatus for the irradiation of flowing liquid films, one or more inclined or vertical surfaces over which said liquid flows, a trough connected to the upper edge of each of said surfaces, a knife edge at the junction between said trough and said surface, one or more baffles in said trough to disperse air or gas bubbles, and to hold back foam and suspended particles in the liquid before said liquid flows over the irradiation surfaces."

Claim 4 is substantially the same as claim 1 except that it does not define the weir as the knife edge at the junction between the trough and the flow surface, and it describes the baffle as being in the form of a flange connected to the cover of the trough and depending into the trough adjacent the weir or upper edge of the flow surface.

There are four features in the construction revealed by the patent. (1) a trough; (2) a baffle in the trough to hold back bubbles and foam; (3) a weir between the trough and the flow-board over which the milk spills; and (4) a flow-board with inclined or vertical surfaces.

The plaintiff manufactured a device following the disclosures of this patent, with two flat exposure surfaces opposite one

another with the irradiating lamp in the center. This is called "Hanovia Alpine Sun Milk Irradiator" and has been approved by the Wisconsin Foundation.

The accused device, "Type YN Milk Irradiator", manufactured by the National Carbon Company, Inc., in 1938, and used by the defendant, consists of a steel drum of cylindrical form with an annular distributing trough around the top welded to the side of the irradiating plate. In this trough are two circular unattached and removable baffles. The defendant's circular states: "Double baffle rings in the distributing trough at the top of the cylinder eliminate all surging and effect an even distribution of milk to all parts of the trough". The milk in this device flows over the top of one baffle under the bottom of the other and into the cylinder or irradiating surface through a slot.

The defendant, to prove invalidity, in addition to reliance on the Supplee and Creamery Package devices and prior publications described above, relies on a number of prior art patent references and publications:

1. Henri, et al. (No. 1,118,006), November 24, 1914, cited in the patent office proceeding concerning the patent in suit, is a patent for apparatus for treating liquids with ultra-violet rays and it discloses that a cylindrical chamber may be used for the purpose of irradiation; that ultra-violet rays may be used for purposes other than sterilization, and that the liquid to be sterilized should flow down the irradiating surface in the form of thin film.

One of the patentees of this patent, von Recklinghausen, published an article in the "Journal of the American Institute of Electrical Engineers" for June, 1914, entitled "Sterilization of Waters by Ultra-Violet Rays of the Mercury-Vapor Quartz Lamp" which discloses a drawing (Fig. 12) in which the liquid flows over the edge, or weir, of a cylindrical drum and then down its sides. There is no baffle here for the purpose of regulating the flow, although an expert in hydraulics, called by the plaintiff, agreed that it would have been relatively easy to use a baffle in this device, baffles being admittedly old in the art for the purpose of smoothing liquids, to prevent direct flow and quiet the flow before it went over the weir onto the irradiating surface.

2. Bates (No. 1,309,995), July 15, 1919, is a patent for solidifying liquefied solids.

This patent discloses a trough into which the liquid is introduced and from which the liquid flows under a baffle and over a weir and from there down an inclined plate. In this patent, the baffle is designated as a "wall" coming down from the top of a box containing the liquefied solid.

3. Warren (No. 1,344,603), June 22, 1920, discloses a series of baffles and a weir over which the liquid flow or coating flows onto a flow-plate where it is applied to a paper base.

4. Spalding (No. 1,800,965), April 14, 1931, discloses a liquid flow device with a baffle to skim off foam. The baffle, as the flange in claim 4 of the patent in suit, depends from a cover of a pan into which the liquid first goes. The patent discloses a series of weirs at the end of a series of pans over which the liquid spills onto the spillway.

5. Schonfelder (No. 1,983,313), issued December 4, 1934, application filed January 10, 1929, shows an apparatus separating sulphur foam from the liquid. This device also shows the liquid flowing under a baffle and over a weir. The baffle, as shown in the drawing here appears to depend from the cover and is below the upper edge of the weir and is for the purpose of separating the sulphur foam from the liquid.

6. The Supplee and Dorcas patent (No. 2,202,610) filed September 21, 1933, issued May 28, 1940, has been discussed above. This patent discloses liquid flowing through a slot and over the lower edge of the slot onto the flow-board.

The defendant also cited, to show the state of the art, Brookfield, No. 883,779, issued April 7, 1908; Rau, No. 1,151,393, issued August 24, 1915; and Fenton No. 1,424,998 issued August 8, 1922. These show various types of flow devices in the arts and the general use of weirs to regulate flow and baffles to act as skimmers in flow apparatus.

The file wrapper of the patent in suit discloses that when certain claims of the patentee were rejected on the Henri, et al. patent (No. 1,118,006) issued November 24, 1914, the patentee's attorney stated: "The applicant's claims are not broad, but are very specific to his structure, which is novel, and he is entitled to protection thereon."

The Supplee and Dorcas patent (No. 2,202,610) had not been issued at the time

the Trebler application was pending; and it might also be well to point out that the patent office examiner had no knowledge of Borden's developments or of the Creamery Package device.

## Opinion.

Dr. Steenbock, in 1928 (No. 1,680,818) was the first to teach that vitamin D could be introduced into milk by the use of ultra-violet rays and that "liquid materials may be allowed to flow in films while being subject to a light treatment". He, as did Dr. Supplee, taught that over-irradiation would have the effect of producing bad flavor and that "The time and manner and exposure of the food or materials to the action of the actinic rays must be varied with the nature of the material exposed, * * *". Dr. Trebler himself described how others before him had irradiated milk when he was investigating the art of milk irradiation. There is no need of discussing in any further detail Dr. Supplee's application of Dr. Steenbock original disclosures.

Claims 2 and 4 of the patent in suit are not limited in any way to any particular vitamin D potency or flavor, or to the character of the films over the flow-board. There are present in these claims no details for a particular process for irradiating milk. Dr. Trebler admitted that distance of the lamp from the film, thickness of film, and intensity of light were the important factors in proper irradiation but he did not point out how to meet these conditions. The claims are not directed to a process of irradiation. The introductory clauses of the claims do not limit the subject matter of the claims. Grosjean et al. v. Panther-Panco Rubber Co., Inc., 1 Cir., 113 F.2d 252, 256; Walker On Patents, Dell.Ed. Vol. II, § 274, p. 1271. What the claims are directed to, is a device for flowing liquids over vertical or inclined surfaces, in other words, a flow apparatus. It was not disputed, nor could it be, that irradiation has no effect on the flow of the liquids over the flow-board. What the irradiation does, is to produce potency and the latter varies with the quality and intensity of the rays employed. The evidence showed that improvement in potency and ability to irradiate milk at higher rates of speed was due to improvement in arc lamps and carbons and not, as the plaintiff contends, to the flow apparatus itself. Whatever increase in potency the plaintiff

is enabled to obtain in its present device is due to larger lamps of higher intensity.

What Dr. Trebler did was to construct the simple flow device described in the claims in suit. But all the elements he assembled in his aggregation were old and in his device they perform the same function they always did. His aggregation produced no new result. Weirs and baffles to regulate flow, and flow-boards upon which liquid film-flows, including milk, were irradiated, were old in the art. It is hardly necessary to discuss in detail again the prior use, knowledge, and patents that substantiate this conclusion. Smooth, uniform films over flow-boards were old with Dr. Supplee. Hence, the contention of the plaintiff that Dr. Trebler took a step forward in the art and perfected a device for uniform flowing films is incorrect. The claims in suit are not even directed to the character of the films. "The claim is the measure * * * to relief, and, while the specification may be referred to to limit the claim, it can never be made available to expand it." Mc-Clain v. Ortmayer, 141 U.S. 419, 424, 12 S.Ct. 76, 77, 35 L.Ed. 800. Further, Dr. Trebler's patent was not limited to smooth or flat flow surfaces. The evidence as to prior knowledge, use, and art leads to the conclusion that Dr. Trebler took certain obvious steps in the art and whatever changes he made did not amount to invention. He took no forward step in the art upon which invention could be predicated. There was no new mode of operation in the device described in the patent in suit. No new result was produced. The patentee's construction reflected nothing more than the mechanical skill of one versed in the prior art. As has been said repeatedly, where each element in a combination or aggregation performs the same function it has already performed and no new result is produced by any joint function, there is no invention. Detrola Radio & Television Corp. v. Hazeltine Corp., May 12, 1941, 61 S.Ct. 948, 85 L.Ed. ——; Hailes et al. v. Van Wormer et al., 20 Wall. 353, 87 U.S. 353, 22 L.Ed. 241, 249; Grosjean et al. v. Panther-Panco Rubber Co., Inc., supra.

## Conclusion.

I conclude that claims 1 and 4 of the patent in suit are invalid. It becomes unnecessary to discuss the question of infringement. Judgment may be entered for the defendant, with costs.