Scheidler *v.* Tustin and others.

*(Circuit Court, W. D. Pennsylvania.* May 13, 1885.)

1. Patents for Inventions—Novelty.
    There is nothing patentable in the application to a horizontal steam-engine and boiler of old devices in the precise combinations in which they had previously existed in steam-engines with vertical boilers, the result obtained being the same in character with the original result.
2. Same—Patent No. 269,329.
    Letters patent No. 269,329, granted December 19, 1882, to Reinhard Scheidler, relating to a combined bed-plate and heater for portable steam-engines with horizontal boilers, *held* to be invalid for want of novelty.

In Equity.
*M. D. & L. L. Leggett,* for complainant.
*Bakewell & Kerr,* for respondents.

Acheson, J. The bill charges the defendants with the infringement of letters patent No. 269,329, granted to the complainant December 19, 1882, upon an application filed October 7, 1882. The complainant's invention relates to a combined bed-plate and heater for portable steam-engines with horizontal boilers. It is formed hollow, and contains pipes through which the feed-water is supplied to the boiler, and is nearly triangular in cross-section, the top and outer sides being in planes at right angles to each other, while the under or hypothenuse side is made concave or concentric with the shell of the boiler to "fit closely" thereto. The bracket or pillow-block, which supports the main shaft of the engine, is cast in a single piece with the heater, and is vertically divided through the center of the bearing-box; the cap being secured to the pillow-block by horizontal bolts, and being supported at the lower end by a seat formed on the top of the heater.

The patent has four claims, each purporting to be for a combination of devices. The first claim is as follows:

"(1) In combination with a horizontal boiler for portable steam-engines, a combined bed-plate and heater, the pillow-block or support for the bearing of the main shaft of which is cast in a single piece therewith, and having a vertical division through the center of the box-opening, substantially as set forth."

The second claim is the same as the first, with the addition, as part of the combination, of the bolts which secure the cap to the pillow-block, "extending horizontally into or through the same." The third claim reads thus:

"(3) In combination with a horizontal boiler for portable steam-engines, a combined bed-plate and heater, extending lengthwise and secured to said boiler, of triangular or nearly triangular cross-section, having the side thereof contacting with the boiler-shell, curved or concentric therewith, to allow it to lie with its surface on the boiler throughout its whole extent, whereby all the heat possible may be conducted from the boiler to the heater, in addition

to that produced from the exhaust steam, as and for the purpose hereinbefore set forth."

The fourth claim covers the seat for the support of the cap in combination with "a combined bed-plate and heater for portable steam-engines, having its pillow-block cast integral therewith, as described."

The engine which is alleged to infringe this patent was built by John H. McNamar, a manufacturer of engines, etc., at Newark, Ohio, in the summer of 1882, and was by him sold and delivered to one of the defendants on or about the first of August of the same year. This engine, it is admitted, embodies the devices and combinations covered by the first two claims of the patent, but infringement of the other claims is denied. Whether or not there is infringement in fact of the third claim depends upon the proper construction thereof. It calls for a combined bed-plate and heater, having the concave side thereof "*contacting with*" the boiler shell, curved or concentric therewith, "to allow it to lie with its surface on the boiler throughout its whole extent." In the same connection the specification uses the terms "to fit closely." It also mentions a disadvantage from "buckling," often resulting "when a space is left between the heater and the boiler;" and one of the objects of the invention is declared to be, "by bolting the bed-plate and heater with its curved and most widely extended side in *direct contact* with the boiler and fire-box, to obtain therefrom all the heat possible." Now the prior state of the art, undoubtedly, was such that this claim must be confined within very strict limits, and hence the defendants with much reason contend that it must be held to exclude any sensible intervening space between the curved side of the bed-plate and the boiler-shell. Thus construed, the defendant's engine does not infringe, for therein the combined bed-plate and heater and the boiler-shell do not touch each other, but are separated by a clearly perceptible space, open, and, according to expert testimony, in extent sufficient materially to interfere with the transmission of heat from the boiler to the heater. The agreed distances, indeed, between the hypothenuse side of the bed-plate and the sheets of the boiler-shell are but one-half of an inch and forty-one sixty-fourths of an inch, and between the same side of the bed-plate and the top of the rivet heads, one quarter of an inch and nine sixty-fourths of an inch. These distances do strike one as unimportant, and they ought, perhaps, to be so held. At any rate, in the further consideration of this case, it will be treated upon the theory that if the third claim is valid, infringement thereof is shown.

Touching the fourth claim of the patent, I need only say that, discarding any doubt arising upon the evidence as to whether the cap of the defendant's pillow-block is seated upon the heater, I will assume the fact of infringement.

This brings us to a consideration of the merits of the patent, and at the outset it must be said that the patent is extremely narrow at

the best. All the claims—the first three in express terms and the fourth by implication—are limited to portable steam-engines having horizontal boilers. Hence, all the combinations are open to free public use when applied to vertical boilers. Now, it is well known and in proof that portable steam-engines with vertical and horizontal boilers have long been in common use for the same general purposes. Again, under the evidence it is, beyond disputation, clear that all the devices entering as elements into the several combinations were old at the date of the alleged invention. They had all been previously used on portable steam-engines. The specification here admits that a combined bed-plate and heater for steam-engines was not new, and that the method of heating it by exhaust steam was also old. But the uncontradicted evidence goes far beyond this admission, and conclusively establishes that long prior to the alleged invention portable steam-engines with horizontal boilers were provided with combined bed-plates and heaters, laid lengthwise upon the boiler and closely fitted thereto, of various shapes, in cross-section,—oval, rectangular, triangular, etc.,—the pillow-block being sometimes bolted to the heater and sometimes cast integral therewith. Now, if the evidence stopped right there, it might well be doubted whether, in the undeniable prior state of the art, the complainant's patent discloses anything more than the exercise of mere mechanical skill. *Atlantic Works* v. *Brady,* 107 U. S. 192; S. C. 2 Sup. Ct. Rep. 225; *Phillips* v. *City of Detroit,* 111 U. S. 604; S. C. 4 Sup. Ct. Rep. 580.

But the defendants have furnished specific proofs of anticipation, and they are unusually full. And, first, let us take an instance of a vertical engine. Such engines were built as early as 1877, and since, by C. Aultman & Co., of Canton, Ohio. The proofs in respect thereto are complete, and include as an exhibit the bed-plate and heater taken from one of these engines which was sold in 1879. The Aultman was a portable steam-engine with a vertical boiler, and it had a combined bed-plate and heater, of triangular shape in cross-section, placed lengthwise upon the boiler and fitted closely thereto. The side of the bed-plate next the boiler was concentric therewith. The pillow-block was cast in a single piece with the bed-plate and heater, and it was divided through the center of the box-opening at right angles to the length of the heater, and the cap was secured to the pillow-block by bolts extending longitudinally. The above-mentioned exhibit also shows a lip overlapping the outer end of the cap of the pillow-block, and a bearing for the inner end of the cap formed by the projecting end of the bed-plate. This identical form of combined bed-plate and heater is capable of use on horizontal boilers, and, in fact, C. Aultman & Co. have recently so applied it. True, some of the complainant's witnesses state that to make it safe and practicable for a horizontal boiler the bottom-rest for the cap should be increased; but if this be conceded, the object could be effected by the mere elongation or extension of the bed-plate,—a change within the grasp of the lowest

grade of mechanical skill.    At the utmost, then, all that the complainant did was to apply to a horizontal engine and boiler old devices in the precise combinations in which they had previously existed in engines with vertical boilers; the result obtained by the new application being the same in character as the original result.    That therein there was nothing patentable, may be confidently affirmed upon the authority of the cases of *Pennsylvania R. Co.* v. *Locomotive Truck Co.* 110 U. S. 490; S. C. 4 Sup. Ct. Rep. 220; and *Blake* v. *City and County of San Francisco*, 31 O. G. 380; S. C. 5 Sup. Ct. Rep. 692.

But the evidence is convincing that the complainant was not, in fact, the first to apply these devices and combinations to horizontal boilers.    For example, it appears that portable steam-engines with horizontal boilers, manufactured and sold by George B. Stevenson between the years 1873 and 1880, had the pillow-block cast in one piece with the combined bed-plate and heater, with a vertical division through the box-opening, and with a seat for supporting the lower end of the cap of the pillow-block, to prevent downward movement; the bolts which secured the cap to the box running horizontally, or in a line with the bed-plate.    By indisputable evidence it is shown that the Stevenson engine embodied all that is embraced in the first, second, and fourth claims of the complainant's patent.    Furthermore, in that engine the combined bed-plate and heater was laid lengthwise upon the boiler in close proximity therewith, and the proof is quite satisfactory that in several instances, at least, prior to 1880, it was triangular in cross-section.

Again, the Thomas engine, a portable steam-engine with a horizontal boiler which was manufactured and sold as early as 1876, deserves special mention.    It had a combined bed-plate and heater extending lengthwise on the boiler and bolted thereto, of nearly triangular shape in cross-section, and the side thereof next the boiler was curved or concentric therewith.    The bed-plate was fitted originally close to the boiler, but, as afterwards made, was bolted about a quarter or three-eighths of an inch from the boiler.    This engine had the pillow-block bolted to the heater and divided horizontally, but it completely anticipated the third claim of the patent, especially as that claim has been construed for the purposes of this case.

There is much other evidence of prior knowledge and use, but it would subserve no good end to extend this opinion by a particular reference thereto.    Suffice it to say that in my judgment the defense of want of novelty is fully made out.    And, having reached this conclusion, I deem it unnecessary to consider the further defense that has been insisted on, resting on the alleged invalidity of the patent on the ground, as is claimed, that it is for mere aggregations of old devices.

Let a decree be drawn dismissing the complainant's bill, with costs.