### TOLEDO PRESSED STEEL CO. *v.* STANDARD PARTS, INC.*

No. 166. Argued March 1, 1939.—Decided May 29, 1939.

---

*Together with No. 167, *Toledo Pressed Steel Co.* v. *Huebner Supply Co.*, also on writ of certiorari to the Circuit Court of Appeals for the Sixth Circuit; and No. 603, *Montgomery Ward & Co.* v. *Toledo Pressed Steel Co.*, on writ of certiorari to the Circuit Court of Appeals for the Second circuit.

*Messrs. Samuel E. Darby, Jr.* and *Wilber Owen* for petitioner in Nos. 166 and 167 and respondent in No. 603.

*Mr. Carl V. Wisner,* with whom *Messrs. Anthony William Deller* and *Carl V. Wisner, Jr.* were on the brief, for petitioner in No. 603.

*Mr. W. P. Bair,* with whom *Mr. Will Freeman* was on the brief, for respondents in Nos. 166 and 167.

MR. JUSTICE BUTLER delivered the opinion of the Court.

These are patent infringement suits brought by the Toledo Pressed Steel Company, owner of Withrow and Close Patent No. 1,732,708, issued October 22, 1929, for a burner for use in outdoor warning signals such as construction torches and truck flares. The first two suits were brought in the federal court for the northern district of Ohio. It filed an opinion indicating the facts that it deemed established by the evidence and without formal findings held the patent valid and infringed by the Bolser and Kari-Keen flares respectively sold by the defendants. The circuit court of appeals for the sixth circuit held the

patent invalid for want of invention and reversed. 93 F. 2d 336. The other suit was brought in the federal court for the eastern district of New York. It made findings as required by Rule 70½, held plaintiff's patent invalid, and dismissed the bill. The circuit court of appeals for the second circuit held the patent valid and infringed by the Anthes flare sold by the defendant, and reversed. 99 F. 2d 806.

In the interest of plaintiff, seeking to uphold the patent prima facie valid, and of the public, liable to exclusion from manufacture, use, or sale in virtue of the right it purports to confer, final adjudication as to validity is of primary importance. The patent in suit relates to torches for guarding street obstructions and to flares, which are large torches, for warning that vehicles are stopped on the road.

Formerly, red lanterns were much used. But, after general use of automobiles having red tail lights to some extent resembling them, they did not serve so satisfactorily as before. Open-flame torches came to be extensively employed. The motion of the luminescent flame distinguishes them from other signals. But there were complaints that they were sometimes extinguished by wind or rain.

Open-flame torches in use for some years before patentees' claimed invention, included those which were bomb-shaped, flat-bottomed, weighted for stability, and with an opening in the top for a wick. That type was well known, at least after the patent covering it, McCloskey No. 1,610,301, was issued December 14, 1926; in 1929 it was held invalid by the circuit court of appeals for the sixth circuit for lack of invention and because anticipated. *McCloskey* v. *Toledo Pressed Steel Co.*, 30 F. 2d 12. Plaintiff had a large business in the manufacture and sale of torches, including the McCloskey type. It advertised that they would burn in all kinds of weather;

having received many complaints of extinguishment by wind and rain, patentees, respectively plaintiff's president and vice president, set about producing something to make them dependable and to serve as represented. Within a year, but after experiments, trials, and failures, they brought forward the patented device.

The specification states that the claimed invention particularly relates to devices to increase efficiency and to prevent flame extinguishment. It declares that the objects of the invention are to provide a simple attachment to attain those ends and a burner so constructed that liability of extinguishment by wind or rain will be reduced to a minimum. It further says that with the described construction and arrangement consumption of oil and wick is materially decreased.

The claims involved are printed in the margin.[1] Considered together, unobscured by artificiality in their state-

---

[1] In all the cases, claims 2, 5, 11 and 12 are involved. In Nos. 166 and 167, claim 13 is also involved. In No. 167, claims 1, 6 and 7 are also involved.

"1. In a device of the class described, a torch body having an opening at its upper end, a wick-receiving tube extending into said opening, and a cap disposed on the outer side of said torch body to enclose the outer end of the wick, said cap having an imperforate upper wall, lateral flame openings, and air openings below the flame openings.

"2. In a device of the class described, a torch body having an opening for a wick, and a flame guard for said wick mounted on the outside of said torch body, said guard including a cap provided with an imperforate top wall and lateral flame openings adapted to emit a luminescent flame, and air ports.

"5. In a device of the class described, a construction torch having an opening in its upper end for a wick, means to hold the wick in place, and a guard fitting over the outer end of the wick but spaced from the sides thereof, said guard having an imperforate top wall and side flame and air openings.

"6. In a device of the class described, a torch body having a wick-opening, a tube for receiving the wick and adapted to extend inside of the torch body, an outwardly extending flange in the region of said

354

ment, it fairly may be said that they show that all that the patentees did was to put over the wick of a torch, well known in the art, an inverted metal cuplike cap having holes in its sides, some to let in air for combustion and others to let out flame. The cap was also well known and had been used as a part of other devices for the protection of kerosene and other flames.

A number of devices patented earlier than plaintiff's included the elements essential to its burner.

Billingham Patent, No. 191,031, issued August 15, 1876, related to torches for lighting street-lamps. It shows a

wick-opening, and a cap connected to said flange and having an imperforate top wall, said cap having a flame opening adjacent its outer end and an air port beneath said flame opening.

"7. In a device of the class described, a torch body having a wick-opening, a cap for enclosing the outer end of the wick but spaced from the sides thereof, an imperforate end wall for said cap, said cap having a series of flame openings and a series of air ports beneath the flame openings, and a disc adapted to embrace the wick and having a flanged upper portion disposed in the region of said air ports.

"11. A burner for a construction torch adapted to emit a luminescent flame and comprising a wick holder having a portion in contact with the wick and a supporting and heat-receiving flange, and means enclosing a space above said flange and surrounding the wick, except for provision for lateral exit of flame and restricted entrance of air for combustion.

"12. A burner for a construction torch adapted to emit a luminescent flame and comprising a wick holder having a portion in contact with the wick and a lateral flange, and a cap enclosing and spaced from the end of the wick and having an imperforate top and provision for lateral exit of flame and entrance of air, and the bottom of the cap being in heat conducting relation to said flange.

"13. A burner for a construction torch adapted to emit a luminescent flame and comprising a wick holder having a portion in contact with the wick and a laterally extending flange and a cap over the wick, the cap having an imperforate, dome-shaped top wall, a lateral flame opening approximately even with the top of the wick and a smaller opening for the inlet of air lower than the flame opening and above the lower edge of the cap, said lower edge being in heat-transferring relation to said flange."

wick-type torch with a tube-like cap having holes, some to let in air, and others to let the flame come out. This cap, imperforate at the top, serves to prevent extinguishment of the flame by wind or rain. Almond Patent, No. 193,796, issued August 7, 1877, related to vapor burners for heating. The device, some parts detached, serves as an illuminating lamp consisting of a body, a wick holder, a cap, a flange having a rim supporting a tube closed at the top. Holes are in the rim to admit air; larger ones in the tube are to let the flames out. Rutz Patent, No. 1,101,146, issued June 23, 1914, covers a flash igniter for gas stove burners. It has a cap to guard the flame and adapted to emit flames extending from the igniter to the gas burners to be lighted. This cap, like plaintiff's, has a supporting and heat receiving flange, a means to enclose the space above the flange and a restricted entrance to admit air for combustion. The record shows that the Rutz hood has been used to achieve the identical results attained by plaintiff's device.

There are other patents, issued before patentees developed the structure in suit, that may be referred to as relevant to the issue of invention in this case. Examples of these are cited in the margin.[2]

The torch body was old in the art to which it belonged. The cap, as part of devices used in other fields, was old and useful to prevent extinguishment of flames by wind or rain and to permit flames to extend through holes to the open air. The problem patentees set for themselves was to prevent extinguishment while preserving usefulness of the flames as warning signals. They solved it by merely bringing together the torch and cap. As before, the torch continued to produce a luminescent, undulating flame, and the cap continued to let in air for combustion,

[2] Blake Patent, No. 453,335, June 2, 1891. Heston Patent, No. 270,587, January 16, 1883. Reekie Patent, No. 192,130, June 19, 1877. Kahn Patent, No. 1,175,527, March 14, 1916.

to protect the flame from wind and rain and to allow it to emerge as a warning signal. They performed no joint function. Each served as separately it had done. The patented device results from mere aggregation of two old devices, and not from invention or discovery. *Hailes* v. *Van Wormer,* 20 Wall. 353, 368. *Reckendorfer* v. *Faber,* 92 U. S. 347, 357. *Lincoln Co.* v. *Stewart-Warner Corp.,* 303 U. S. 545, 549–50. On the records before us, it is impossible to hold that production of the patented device required more than mechanical skill and originality attributable to those familiar with the art of protecting flames of kerosene and other burners. *Altoona Theatres* v. *Tri-Ergon Corp.,* 294 U. S. 477, 486; *Powers-Kennedy Co.* v. *Concrete Co.,* 282 U. S. 175, 186; *Concrete Appliances Co.* v. *Gomery,* 269 U. S. 177, 184, 185; *Hollister* v. *Benedict & Burnham Mfg. Co.,* 113 U. S. 59, 72–73.

As evidence in its favor on the question of invention, plaintiff cites efforts to find something useful to protect open-flame torches from extinguishment by wind or rain put forth by one engaged in operation of a street railway and by another employed by a manufacturer of lanterns. But it does not appear that either was familiar with the relevant prior art. Nor is there any evidence of general or widespread effort to solve the problem here involved. There is nothing that tends to raise what patentees did to the realm of invention. See *Paramount Corp.* v. *Tri-Ergon Corp.,* 294 U. S. 464, 476. Plaintiff also brings forward the fact that some manufacturers, including three substantial ones, have taken licenses under its patent. It does not appear that these licensees have made wide or successful use of the device. Lack of novelty being clearly shown, acceptance of license under the circumstances of this case, is without weight. *Thropp's Sons Co.* v. *Seiberling,* 264 U. S. 320, 330. *John T. Riddell* v. *Athletic Shoe Co.,* 75 F. 2d 93, 95. And similarly without significance on the question of novelty is the fact that, as plaintiff

claims, utility resulted and commercial success followed from what patentees did. *Firestone Tire & Rubber Co. v. U. S. Rubber Co.*, 79 F. 2d 948, 954.

It results that the decrees in Nos. 166 and 167 must be affirmed, and that in No. 603 must be reversed.

> *Nos. 166 and 167, affirmed.*
> *No. 603, reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.