## SANFORD INV. CO. v. ENTERPRISE WHEEL & CAR CORPORATION.

### Civ. A. No. 18.

District Court, W. D. Virginia, at Abingdon.

Dec. 1, 1941.

William S. Hodges, of Washington, D. C., and William A. Stuart, of Abingdon, Va., for plaintiff.

Gilbert P. Ritter (of Ritter, Mechlin & Muir), of Washington, D. C., and Floyd H. Roberts, of Bristol, Va., for defendant.

BARKSDALE, District Judge.

Probably the most distinguishing characteristic of this case is its prolixity. This is not particularly surprising when it is noted that the four patents in suit contain an aggregate of 500 claims. And all this verbiage is used to claim improvements in the simple structure, which Judge Soper, in another case, described as follows: "The mine cars referred to are small railroad cars with four straight sides or walls forming a rectangular box or receptacle for coal or ore, and resembling the body of an ordinary dump truck." Sanford Investment Co., Inc., v. Crab Orchard Improvement Co., 4 Cir., 104 F.2d 347.

At one point in his argument, plaintiff's counsel states tersely what he contends to be the basic concept of the four patents in suit, as follows (Plaintiff's Reply Brief, pp. 2 and 3):

"The basic concept of Stow—which appears in all of the patents in suit—is the idea of greatly improving the strength and durability of a mine car, and at the same time obtaining increased lading capacity, and a lowering of the center of gravity of the car.

"The practical embodiment of this concept, in its broadest aspect, is based upon the idea of a traction truck frame comprising two longitudinal side sill beams extending substantially the length of the car, and connected at their ends by transverse beams or end sills, thereby providing a rectangular frame of such sturdiness that the upper lading walls are not required to sustain any of the bumping and hauling strains, and only need be strong enough to retain the lading load. In order to obtain increased lading capacity, and at the same time to brace the side sills, the floor of the car is secured to the lower edges of the sills, and extends between them, so that a lading-receiving space is provided by the four walls of the traction truck frame. To obtain the greatest possible depth to this traction-truck lading space, and at the same time maintain the maximum overall height of the car, the wheel axles are carried by the side sills, so as to bring the floor below the horizontal axle plane. The end sills not only serve to join the ends of the side sills and to brace them, but they also function as lading-retaining walls. Thus, a further threefold advantage is obtained, namely, the desired increased lading capacity, and the lowering of the center of gravity, thereby preventing top heaviness, and strengthening by the conjoint effects of the side and end sills and the sub-axle floor."

The defendant summarizes its contentions as follows (Defendant's Brief, pp. 373 to 381):

"The four Stow patents in suit are examples of nearly everything patents should not be. By reason of the multiplicity of their claims, they tend to conceal and confuse, rather than disclose and clarify, the alleged advances or improvements to which they relate. Instead of being clear and concise, their specifications are unclear and prolix. Trivial details of construction are described with tedious minuteness, while structural features specified in some of the claims are either inadequately and inaccurately described or are not described at all. Details of construction specified in certain of the claims are not to be found in the patent drawings. By employing indeterminate adjectives and by describing structure in terms of mere function, some of the claims are ambiguous and of uncertain scope; and many of the claims are unsupported by any oath of inventorship. Moreover, by amendments filed by the assignee after the death of Stow, some of those patents have been broadened so as to embrace subject-matter not described in the applications as filed.

"Each of the Stow patents is concerned with alleged improvements in mine cars of the so-called wing type. In each patent, the object is stated to be to increase to the maximum the lading capacity of the car (No. 1,961,016, p. 1, lines 13-17; No. 1,-961,018, p. 1, lines 10-18; reissue No. 20,-590, p. 1, column 1, lines 3-17; and reissue No. 20,591, p. 1, column 1, lines 39-49). In all of the patents that object is accomplished in substantially the same way by substantially the same means.

"The structures disclosed in the four patents are basicly alike. They differ from each other only in matter of detail. Each is a wheeled car consisting fundamentally of wheels and axles upon which is mounted a car body for containing coal, ore or the like. In each instance, the increased lading capacity of the car is obtained by making the space between the side sills of the car available for receiving lading. To that end, each of the Stow patents in suit discloses a car the central portion of whose floor is depressed to or substantially to the level of the bottoms of the car side sills, the sills being positioned so that the portion of the floor extending between them is at a lower level than the level of the car wheel axles. This arrangement of the central portion of the lading bottom of the car at a level below that of the axles of the car wheels is a principal characteristic of all of the cars of the patents in suit and it is a feature that is specified in most of the claims of all four of plaintiff's patents. Of the forty claims in issue, only seven omit to specify that the car has a sub-axle floor, that construction being variously recited in the claims as a 'sub-axle lading bottom', as being 'below the plane of the tops of the car axle journals', as being 'level with the

lowest horizontal plane of the side sill members', or as being 'below the horizontal plane of the wheel axes'.

"The location of the central portion of the floor or lading bottom of a mine car at a level below the car wheel axles, so as to make the space between the longitudinally extending side sills of the car into a pocket available for receiving lading, is not a feature of mine car construction originated by Stow. Such a plan for increasing the lading capacity of a mine car was old and well known to mine car manufacturers before Stow entered the field. It is the very plan employed for the same purpose in the Alpha Portland Cement Company cars of stipulations A and B, and in the United States Coal & Coke Company car of stipulation R.

"There is also one other principal feature termed a 'traction truck' or 'traction truck frame', which is common to the cars of all the Stow patents. It is the underframe which carries the car body and which is itself supported by the wheels and axles and serves to receive and transmit the tensile and compressive haulage strains communicated to it from other cars during use (No. 1,961,016, p. 5, line 131-146; No. 1,961,018, p. 3, lines 37-42; reissue No. 20,590, p. 1, column 1, lines 43-51; and reissue No. 20,591, p. 1, column 2, line 19).

"To provide a mine car with an underframe was, of course, not new with Stow. Nor was it a new idea at the time the applications for the Stow patents were filed to employ the underframe for receiving and transmitting the haulage strains, both tensile and compressive. Underframes serving to transmit the draft and bumping strains were old. The Alpha Portland Cement Company cars, the Pressed Steel Car Company car of stipulation N, and the American Car and Foundry Company car of stipulation O, as well as the cars of the patents of Dodds No. 834,003, Roby No. 1,087,318, Simpson No. 1,176,782, and Dorsey No. 1,305,076 are examples of cars having underframes of that character.

"Wheels, axles, axle boxes, underframes, car bodies, hinged end-gates, wheel hoods, lading deflector plates, drawbars, couplings, bumpers, cantilever beams, side wall stiffeners, and all the various other structural details which are embodied in the cars of the Stow patents were commonly used as features of mine car construction for many years before Stow entered the field. And they were used for precisely the same purpose that they respectively serve in the cars of the Stow patents. Stow invented nothing of substance. He brought forth no new elemental feature. To no one of the old features of mine car construction did he do anything more than make a change in its form. He merely judiciously selected from the highly developed mine car art wheels, axles, car bodies, draw-bars, bumpers, wheel hoods and the like, and assembled them in old relations. Only the most ordinary mechanical skill would be required to borrow from old mine cars, as Stow did, one or more of their parts or structural features and put the same in another car, there to perform the same function as in the old cars.

"The claims of the several Stow patents are for alleged combinations of elements, but the alleged combinations claimed either are not new or are not combinations in fact and do not meet the essential tests of a combination. Except for claims 57 and 60 of reissue No. 20,591 (which are invalid on other grounds), the collocations of elements recited in the respective claims of plaintiff's patents are mere obvious aggregations of elements and, therefore, are unpatentable. A mere multiplicity of elements does not make a combination. Multiplication and permutation of elements may proceed indefinitely without creating a patentable combination, unless by their collocation the elements cooperate to produce a new and unitary result which is the joint product of the several parts or elements; Richards v. Chase Elevator Company, 158 U.S. 299, 302 [15 S.Ct 831, 39 L.Ed. 991]. So long as each element performs some old and well known function or appropriate effect unchanged by the others, the result is not a patentable combination, but is an aggregation of elements. By merely aggregating into a single structure a plurality of earlier devices and inventions of others, one may not acquire the right to exclude the public from using together in one structure those individual things which are parts of the public domain. Were the law otherwise it would impede, rather than promote, the progress of science and the useful arts.

"The fact that the four patents in suit, each of which is based on a mine car composed of the same basic parts or elements, contain an aggregate of five hundred claims each purporting to be for a different alleged 'combination', in and of itself indicates that the vast majority of those claims cannot help but be for spurious combinations and,

therefore, void. The relatively few parts which together constitute a mine car could not possibly jointly interact with each other so as to · constitute so many hundreds of different combinations. In the Stow patents, the claims have been multiplied by treating mere variations in form of the structural elements of a mine car not as improvements in those parts or elements, but as if they were new elements which created new combinations when associated with other parts. All such claims, however, must be held to be void because 'the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination'; Lincoln Engineering Co. v. Stewart-Warner Corp., supra.

"Defendant's cars more nearly resemble the structures of the prior art than they resemble the ' cars of the Stow patents. Whatever similarity exists between plaintiff's patents and defendant's cars is obviously due to the fact that both Stow and defendant have alike drawn upon the prior art. Defendant began building its mine cars some years before any of the Stow patents were issued (R. pp. 573–574). Thus there is no possibility that the features embodied in defendant's cars were copied from plaintiff's patents. On the other hand, the evidence clearly shows that the plaintiff was in possession of photographs of defendant's cars three years before the patents in suit were issued (R. p. 579) and more than a year before wholesale amendments were made to their specifications and claims (R. pp. 993–1018). Such circumstances furnish a valid reason for applying strict rules of interpretation to the claims of the Stow patents; Doughnut Mach. Corp. v. Joe-Lowe Corp. [4 Cir.], 67 F.2d 135, 136. However, in order to apply the terms of the claims to defendant's cars, plaintiff's witness Baker found it necessary to apply them with 'no particular thought to function' (R. p. 476) and as being entitled to 'the broadest construction that language will permit' (R. p. 534) just as if the claims covered pioneer inventions.

"It may well be asked, where was there any invention in the mine cars. described in the Stow patents. It is clear that Stow did not invent wing type cars having the central portions of their floors at a level below the axles of the car wheels, for that is an old feature of mine car construction used long before in the Alpha Portland Cement Company and other mine cars; he did not invent wing type mine cars in which the floors of the wings were located below the car wheel axles, for that had been done long before in the cars of stipulations M, Q and R; he did not invent the idea of using the underframe of a mine car to receive and transmit the tensile and bumping haulage stresses imparted to the car in service, for mine car underframes had been used for that purpose in the Alpha Portland Cement Company cars and in the cars of stipulation O and of the Simpson patent No. 1,176,782, for example; he did not invent the plan of having the car wheel axles intersect the side sills of the car, for that had been done before in the Alpha Portland Cement Company cars and in the cars of stipulation O and of Simpson patent No. 1,176,782; he did not invent the use of a relatively light and flimsy lading holding body mounted on a rigid underframe, for that was old in the Alpha Portland Cement Company cars and in the First Creek Coal Company cars, for example; he did not invent the idea of using axle boxings having elongated openings to permit the axles to rise and fall so as to allow the car wheels to follow uneven track, for such axle boxes for mine cars were old in the Alpha Portland Cement Company cars and in the Gustafson patent No. 895,179 of 1910, for example; he did not invent hoods or coverings for the upper parts of the wheels of mine cars, for they were old for that purpose in the Alpha Portland Cement Company cars and in the cars of stipulations M, R and S, besides which Stow admitted their antiquity in reissue patent No. 20,-590; he did not invent the use of inclined deflector plates to facilitate the discharge of lading from a mine car, for such deflector plates were old in the cars of stipulations D, E and F and in the Otis British patent No. 14,081 of 1902, for example; he did not invent the use of a hinged endgate to permit discharge of lading from the car body, for that was old and common in the Miller patent No. 251,061 of 1881 and in the Simpson patent No. 1,176,782 of 1916, for example; he did not invent the application of bumpers and drawbars or couplings to the ends of mine cars, for that had been done in the Alpha Portland Cement Company cars, in the First Creek Coal Company cars, and in the cars of stipulations J and O and the Simpson patent No. 1,176,782; he did not invent the idea of using transverse cantilever beams as car body supports, for that plan had

been adopted in the cars of the Kadel patent No. 1,207,176 of 1916, and Neikirk patent No. 1,299,212 of 1919, and of stipulation S.

"What then did Stow invent? Did he produce by the use of those elements a combination that was not disclosed in the prior art or that would not have occurred to an ordinary skilled mechanic? Did the elements he selected from the prior art and associated with each other in the cars of the patents in suit cooperate to produce any new or unitary result that was the joint product of the parts he associated together? Obviously not. There is no reasonable ground for any such pretensions. Stow invented nothing new. He merely selected a number of things from the prior art and incorporated them into individual structures without thereby imparting to them any new cooperative law or any new mode of operation or any new function and without producing any result other than or different from the sum of the results of the old individual elements."

I substantially agree with the defendant.

It seems to me that the plaintiff must fail here by reason of three well-known principles of patent law:

■ (1) Even if it be conceded that Stow produced a mine car or cars which were new and useful, such cars were not patentable if they resulted from mechanical skill applied to the art as it then existed.

■ This principle is well stated in the very recent case of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed. ——, in which the Supreme Court delivered its opinion on November 10, 1941. Mr. Justice Douglas, speaking for the Court, said:

"We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute 35 U.S.C. § 31, 35 U.S.C.A. § 31; R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. R. Co., 107 U.S. 649, 17 Otto 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. [City of] Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 2 Otto 347, 356, 357, 23 L.Ed. 719. The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. Phillips v. City of Detroit, supra; Concrete Appliances Co. v. Gomery, supra [269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222]; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra [282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278]; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., supra [294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005]; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S. Ct. 897, 83 L.Ed. 1334. That is to say the new device, however, useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain.

"Tested by that principle Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8, authorizes Congress to reward. He merely incorporated the well-known thermostat into the old 'wireless' lighter to produce a more efficient, useful and convenient article. Cf. Electric Cable Joint Co. v. Brooklyn Edison Co., supra. A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' (Blake v. [City and County of] San Francisco, 113 U.S. 679, 683, 5 S.Ct. 692, 694, 28 L.Ed. 1070) even though the new result had not before been contemplated. Pennsylvania R. R. Co. v. Locomotive Engine Safety Truck Co., 110 U.S. 490, 494, 4 S.Ct. 220, 222, 28 L.Ed.

222, and cases cited. Certainly the use of a thermostat to break a circuit in a 'wireless' cigar lighter is analogous to or the same in character as the use of such a device in electric heaters, toasters, or irons, whatever may be the difference in detail of design. Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art.

"Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art. The consequences of the alternative course were forcefully pointed out by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 17 Otto 192, 200, 2 S. Ct. 225, 231, 27 L.Ed. 438: 'Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accounting for profits made in good faith.' Cf. Mr. Justice Campbell dissenting in Winans v. Denmead, 15 How. 330, 344, 345, 347, 14 L.Ed. 717; Hamilton, Patents and Free Enterprise, Mon. No. 31; Investigation of Concentration of Economic Power, Temporary National Economic Committee, 76th Cong., 3d Sess., ch. VIII (1941).

"Such considerations prevent any relaxation of the rule of the Hotchkiss case as respondent would seem to desire." See also Morrison v. Coe, App.D.C., 122 F.2d 793.

In the instant case, I cannot escape the conclusion that Stow's cars reveal "merely the skill of the calling" and not "the flash of creative genius".

(2) "Aggregation" is not "invention".

It seems to me that Stow produced no new combination of elements in any of his cars, but simply aggregated into each of his several structures a number of earlier devices and inventions of others, which performed only their usual and customary function. Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 39 L.Ed. 991; Powers-Kennedy Corp. v. Concrete Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334.

(3) And even if Stow invented anything, which I do not think he did, it seems to me beyond question that he claimed much more than he invented, and his patents are void under the doctrine enunciated in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. In that case, the Court said (303 U.S. pages 549 and 550, 58 S.Ct. page 664, 82 L.Ed. 1008): "The patent is therefore void as claiming more than the applicant invented. The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

For the reasons stated in this memorandum and my Findings of Fact and Conclusions of Law, an order will be entered dismissing this suit at plaintiff's costs.