### O'BRIEN et al. v. HOWARD & LEWIS MOTOR SALES, Inc.

### No. 567.

District Court, D. Rhode Island.

Dec. 19, 1941.

Louis V. Jackvony, John L. Curran, and Perley H. Plant, all of Providence, R. I. (Ira Lloyd Letts, of Providence, R. I., of counsel), for plaintiffs.

S. Everett Wilkins, Jr., and Roger T. Clapp, both of Providence, R. I., and I. Joseph Farley, of Detroit, Mich., for defendant.

HARTIGAN, District Judge.

This is a patent infringement suit seeking an injunction and accounting for profits and damages. The defenses are that the patent in suit is invalid and has not been infringed by the defendant.

United States Letters Patent No. 1,677,-789 were granted July 17, 1928, to Clinton L. Mabey for a battery box clamp, and this is the patent in which infringement is charged.

The plaintiffs are the patentee Clinton L. Mabey and Robert P. O'Brien, the latter being an assignee of one-half interest in and to the patent in suit by an assignment executed by the patentee on March 11, 1937, and recorded in the United States Patent Office June 2, 1937.

The defendant is Howard & Lewis Motor Sales, Inc., a corporation organized under the laws of the State of Rhode Island, which has its regular place of business in the City of Providence, where it is a distributor of Ford automobiles. It was stipulated by and between counsel for the parties that the defense of this case has been assumed entirely by the Ford Motor Company, of Dearborn, Michigan.

For the purpose of this suit the plaintiffs rely entirely upon claim 3 of Patent No. 1,677,789, which reads as follows: "In a device of the character described, a battery box holder, a battery box in said holder, and a clamp therefor comprising a skeleton frame provided with corner plates adapted to bear against the upper edges of the battery box adjacent to the corners thereof, and having depending lugs engaging the sides of said battery box adjacent to the corners thereof whereby lateral movement of said battery box in said holder is prevented, and means carried by said holder for drawing the clamp into close engagment with said battery box."

The parties entered into three stipulations which in substance are to the effect that within six years preceding the date of the filing of the complaint, Howard & Lewis Motor Sales, Inc., sold within the State of Rhode Island, 1934, 1935, 1936 and 1937 models of automobiles made by Ford Motor Company, of Dearborn, Michigan, which contained and had embodied in the chassis structures thereof, battery box holders as shown in the drawings attached to said stipulations.

Mabey testified that in June or July, 1926, he made a metal frame member,

Plaintiffs' Exhibit C, the purpose of which was to clamp the battery in an automobile. Mabey, in explaining the operation of Exhibit C, said (Tr. p. 17): "Well, I bought a new battery for my automobile, and the battery I had in it was good, but it had broken apart through the clamping process, so I bought a new battery, and I didn't want to use it on the clamps, because they at that time destroyed or broke the old one, so I decided that I would make a clamp that would do the job, so after looking the thing all over carefully, and thinking it out, I made this frame; and the frame goes over the top of the battery, engages the corners to hold it down and stop it from shaking, and these holes I put in there so it would go over the posts that were in the car at that present time. Those were the posts that were in there with the old clamps on, with this patent model." He admitted that Exhibit C did not have depending lugs.

The Mabey patent application, as originally prepared, contained five claims. Claim 4 is "A battery box clamp comprising a frame the contour of which substantially conforms to the upper face of the battery box and which is provided with bearing plates adapted to bear against the upper edges of the battery box, the plates located at each end of said frame being spaced from each other to provide a free space for the handles of said box therebetween;" and Claim 5 is "A battery box clamp comprising a frame provided with plates engaging the upper edges of the battery box at spaced points and provided with means engaging the sides of said battery box to prevent horizontal movement thereof, and means for forcing the said clamp against the upper face of said battery box whereby the box is held against vertical movement relative to the clamp."

Defendant's Exhibit 13 discloses the following official action of the Patent Office on the application in the following language:

"Claims 1, 4 and 5 are completely anticipated by Hawthorne, (1,174,571), whose cover, although not perforated is equivalent.

"As to claim 3, parts 21 may be considered the corner plates.

"Claim 2 is allowed.

"The others are rejected."

The patent in suit contained three claims each of which specified a rectangular open frame or skeleton frame having downwardly extending lugs engaging the sides of the battery box adjacent to the corners thereof. The lugs are shown in Figs. 4 and 5 of the patent and are described in the text of the specification in lines 95 to 98 on page 1 of the patent specification (Plaintiffs' Exhibit A) as follows: " * * * and the frame has downwardly extending lugs 18 adapted to engage the side and end portions of the battery box to hold the same against horizontal movement." There is further textual description of lugs beginning in line 105 and continuing to the end of the specification.

The defendant adopted for its 1934 models an open rectangular frame (Defendant's Exhibit C), made out of strips of flat steel and which in the frame for the 1934 and 1935 models had an angular shaped reinforcing member at the ends thereof with the vertical wall or flange 35 (Drawing Exhibit I) of the angle lying adjacent to the end of the open frame and with the horizontal wall, 32, of the angle being adapted to bear against the top of the battery box and clamp it in position, the side edges 31, of the horizontal portion of the angle extending at an angle at the corners of the frame and being bent around the outer side edges thereof. This construction was stipulated during the trial and is shown in the drawing, Plaintiffs' Exhibit I, particularly Figs. 1 and 4 thereof attached to and forming part of the stipulation.

Substantially the same construction (see physical exhibits, Plaintiffs' E and Defendant's 16) was used by the defendant throughout the years. 1936 and 1937, also shown in drawings Exhibit J and K forming part of the stipulations with the exception that the strip was no longer made of angular cross-section but was provided with a vertical section designated by the reference character 15 in Fig. 4 of Exhibit K and the end thereof was bent, or crimped, around to form, what might be termed, the angular corner clamping plates 18.

The plaintiffs contend that every element recited in claim 3 of the patent in suit is present in the structures shown in Exhibit G and each of the drawings, Exhibits I, J and K and in the photo·prints of these drawings and performs the same identical function and bears the same re-

lation to the remaining elements recited in the claim as the corresponding element shown and described in the patent in suit, and each of the exhibits and drawings referred to in this paragraph contains the same combination of elements correspondingly arranged and co-operating each with the other in a manner identical with that of their corresponding elements in the patent in suit and that the defendant has infringed claim 3 of the patent in suit within six years preceding the date of filing suit.

The defendant's testimony showed that the Willard Storage Battery Company as far back as 1904 and 1905 manufactured storage batteries (Defendant's Exhibits 1 to 7, inclusive) for railroad car lighting. These storage batteries were manufactured principally for the Pennsylvania Railroad Company and some for electrical automobiles from 1903 or 1904 up until the years 1907 and 1908. They were provided with a rectangular open clamping frame as shown by Physical Exhibit 18 and ·Willard Drawings Exhibits 1 to 7 and were constructed of malleable iron and were shaped to conform to the contour of the top of the battery to be clamped.

An electrician employed by the Pennsylvania Railroad Company produced drawings of that company, Exhibits 9, 10 and 11, which show the same type of rectangular open battery clamping frame that was shown in the drawings of the Willard Storage Battery Company, Exhibits 1 to 7. He also testified that the frame when secured in position on the battery would prevent any horizontal or lateral movement of the box relative to the frame.

A consulting engineer specializing in automotive work for many years testified that on August 6, 1927, when application for the Mabey patent was filed, clamping devices of the type shown in Fig. 1 of the Mabey drawing were not the only type of clamping devices existing in the automobile industry.

He testified that the W. H. Wright Patent No. 667,755, patented February 12, 1901, discloses a frame particularly for crating such things as a group of cans, and the expedient of an open frame using a clamp is shown, in which the clamped material is clamped between two such open frame clamps, and which are drawn together to give the package stability; that the E. A. Hawthorne Patent No. 1,188,649, June 27, 1916, is a box or battery case, or holder, adapted to receive a storage

battery, and having an open or skeleton frame adapted to clamp it similarly down to the holder and that this is "a very simple example of using this common mechanical expedient of an open frame clamp applied to the carrying of a storage battery in a road vehicle;" that the B. Kunkel Patent No. 1,424,144, July 25, 1922, is an example of clamping a battery for use in a vehicle, and by means of an open, or skeleton frame; that the W. Knoblock Patent No. 1,554,823, September 22, 1925, shows a method of holding battery covers, in particular battery covers which he described "is a variant of this very common expedient of a skeleton clamp to hold parts in position." He described the Cooper British Patent No. 22,129 of 1913, as showing another example of the skeleton or open frame for a holder for packages of various kinds, and specifically one is for a rectangular container for spare fuel to be taken in a car or in a motor boat, and in which the package is clamped or bolted down against the frame by the spring and that the structure has a rectangular open frame. He also testified that the wooden clamping frame of the Chalmers type as illustrated on page 379 of "The Automobile" of February 5, 1914, functioned to hold the battery fixedly in position against lateral or horizontal movement. The Wright, Hawthorne, Kunkel, Knoblock and Cooper patents and "The Automobile" comprise Defendant's Exhibit 15.

He further testified, Tr. p. 117: "54 Q. Now will you state, with respect to the prior art, at the time the Mabey patent was filed whether or not there was any problem to be solved in connection with the clamping, or not clamping the battery in an automobile, and making reference to any of the models that you have by way of illustration? A. No, of course not. As I have tried to make clear to Your Honor, whether a battery be clamped or not is purely a designer's choice. They may be carried successfully either clamped or not clamped, and of course the frame of Cooper or the clamping frame of Willard, are better adapted either to hold a battery clamped, or to hold it not clamped, than the structure of the patent in suit."

Tr. p. 119: "59 Q. Now with the prior art construction what if any problem is left to be solved if one had in the art the clamping frame of Chalmers or the Willard frame? A. I think certainly to a

mechanic it is perfectly obvious there was no problem, because batteries had been carried with perfect satisfaction both clamped and unclamped; and the Willard frame, or what Chalmers called the wooden saddle, or the use of the Cooper frame, put on top of a battery, any of those were perfectly satisfactory to hold the battery, either clamped or unclamped; and the Willard frame is perhaps the best of the several frames before the Court to use if the battery is not to be clamped; and is not a saddle where the frame is to be relied on to keep the battery in its proper position."

He also testified, Tr. p. 120, there was not any novelty in 1927 in the provision of a skeleton frame for clamping a battery in place nor with respect to a skeleton frame provided with corner plates.

Tr. p. 130: "82 Q. Do you say as a skilled mechanic and designer, Mr. Brush, that there is to be found in the defendant's construction any of the teachings of the Mabey patent that were novel at the time? A. There is nothing in any of the accused structures which can be found first disclosed, or first taught, in the patent in suit."

Tr. p. 131: "83 Q. I would like to ask just one other question, Mr. Brush, about these depending lugs. Is there any advantage in that sort of construction? A. No. There is a distinct disadvantage, because the lugs get a much more limited area of contact against the tendency of an unclamped battery to move than does the prior art, and of course the type of frame in the patent in suit is so different from the prior art, and from the structure in suit, that in certain of the accused structures the clamping frame of the patent could not be used if the defendant wanted to."

Tr. p. 135: "93 Q. Now will you state whether or not in your opinion if the designer of those frames, which defendant had used, had had before him the disclosure of the Mabey patent, that it would have assisted him in any way to realize the frames of the type shown in Exhibit E and Exhibit G? A. Absolutely not."

Tr. p. 138: "95 Q. I don't know whether you have stated it yet or not, but do you find the patent in suit represents an advance, a technical advantage over Willard frame, or not? A. My considered opinion is that it represents merely a substantial step backwards."

The evidence clearly discloses that rectangular or skeleton frames were used for clamping and were well known to the art when Mabey made his device. The incorporation of depending lugs mentioned in claim 3 in the skeleton frame clamp was not an "invention" or "discovery" within the meaning of the patent laws.

■ It is my opinion that the Mabey device was not the result of invention.

■ The United States Supreme Court said in Altoona Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S. Ct. 455, 458, 79 L.Ed. 1005: "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art."

The statement of Judge Ford in the case of Hanovia Chemical & Mfg. Co. v. David Buttrick Co., D.C., 39 F.Supp. 646, 651, is applicable to the instant case and is as follows: " * * * The evidence as to prior knowledge, use, and art leads to the conclusion that Dr. Trebler took certain obvious steps in the art and whatever changes he made did not amount to invention. He took no forward step in the art upon which invention could be predicated. There was no new mode of operation in the device described in the patent in suit. No new result was produced. The patentee's construction reflected nothing more than the mechanical skill of one versed in the prior art. * * * "

In the case of Cuno Engineering Corporation, Petitioner, v. Automatic Devices Corporation, 62 S.Ct. 37, 40, 86 L.Ed. ——, decided November 10, 1941, the United States Supreme Court said:

"We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks

v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. R. Co., 107 U.S. 649, 17 Otto 649, 2 S.Ct. 663, 27 L. Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S. Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 2 Otto 347, 356, 357, 23 L.Ed. 719. The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. Phillips v. Detroit, supra; Concrete Appliances Co. v. Gomery, supra [269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222]; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra [282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278]; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U. S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., supra; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain.

"Tested by that principle Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8, authorizes Congress to reward. He merely incorporated the well-known thermostat into the old 'wireless' lighter to produce a more efficient, useful, and convenient article. Cf. Electric Cable Joint Co. v. Brooklyn Edison Co., supra. A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' (Blake v. [City and County of] San Francisco, 113 U.S. 679, 683, 5 S.Ct. 692, 694, 28 L.Ed. 1070) even though the new result had not before been contemplated. Pennsylvania R. R. Co. v. Locomotive Engine Safety Truck Co., 110 U.S. 490, 494, 4 S.Ct. 220,

222, 28 L.Ed. 222, and cases cited. Certainly the use of a thermostat to break a circuit in a 'wireless' cigar lighter is analogous to or the same in character as the use of such a device in electric heaters, toasters, or irons, whatever may be the difference in detail of design. Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art.

"Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art. The consequences of the alternative course were forcefully pointed out by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 17 Otto, 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438: 'Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the art. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith.'"

I conclude that Claim 3 of the patent in suit is invalid. It becomes unnecessary to discuss the question of infringement.

Judgment may be entered for the defendant, with costs.