CHANNEL MASTER CORP.
v.
VIDEO TELEVISION, Inc.
Civ. No. 10087.

United States District Court
E. D. New York.
March 17, 1953.

Armand E. Lackenbach, New York City, for plaintiff.

Booth, Lipton & Lipton, New York City, by Harold A. Lipton, New York City, of counsel, for defendant.

INCH, Chief Judge.

Plaintiff, as assignee of a patent for a television receiving antenna, brings this action for infringement of the patent and seeks injunctive relief and an accounting.

The only issue presented at the trial was the validity of the patent.

The application for the patent was filed by plaintiff's assignor, Joseph Y. Resnick, on October 11, 1948 and the patent was issued on March 22, 1949.

Broadly stated, the patent in suit is a foldable H-frame television antenna, one leg of which is a "dipole" and the other leg of which is a "reflector", pivotally attached to opposite ends of a "crossbeam". The "dipole" and "reflector" each consist of two elements or arms pivotally attached to the ends of the "crossbeam" in such a way that the four elements may be folded in, almost parallel to the "crossbeam", or swung out so that the two "dipole" elements are parallel to the two "reflector" elements, thus forming a rigid H-frame antenna. A "means of locking" the two "dipole" elements parallel to the two "reflector" elements is also provided. Finally, the "crossbeam" is equipped with a clamp for securing the entire assembly to a mast.

There are four claims in the patent, all of which are at issue. The differences between the claims are minor in nature and are not material for the purposes of this opinion. Suffice it to say that certain of the claims are not limited to an H type frame and do not require the two separate elements of either the "dipole" or "reflector" to be in alignment to each

other, instead they may be disposed at an angle to each other.

It is not disputed that the individual components of the claimed invention, such as the "dipole", "reflector", "cross-beam", brackets and locking device, were all well known in the art. It is also not disputed that the claimed invention made no advancement or improvement, and created nothing new with respect to the electronic performance or the ruggedness of the television antenna.

The feature of the claimed invention which plaintiff claims to be new and an advancement over the prior art was the mechanical improvement of having a pre-assembled, foldable, one-piece antenna, the component parts of which could be moved into position and locked. The objects of the invention are stated in the patent, in part, as follows:

"The general object of the invention is to provide a new, simple, inexpensive, and practical collapsible television receiving antenna assembly which, when properly set up, is a rigid H-frame one leg of which is a dipole antenna and the other leg of which is a reflector, said assembly being provided on the crossbeam between said legs with means whereby the assembly may be secured to a mast at any of a variety of angular dispositions within planes normal to said mast. * * *

"A particular object of the invention is to provide such an antenna assembly of rugged yet lightweight construction, strong enough to withstand expected wind stresses, and of materials highly resistant to atmospheric conditions.

"Another object is to provide such an antenna assembly which may be collapsed for storage, packaging, and shipment into a bundle of considerably less compass than that of the assembly when set up for television reception, and which is of such simple construction that it may be readily set up and mounted upon a mast with but little exercise of me-chanical skill and with the aid of no tool other than a screwdriver."

At the trial plaintiff sought to prove that this preassembled, foldable antenna had the following advantages: (1) that it could be simply and easily installed, (2) that it eliminated a considerable amount of danger to installation men erecting television antennas in high places, (3) that it reduced installation time by from 25% to 30% and (4) that it eliminated the possibility of error in assembling more complicated forms of television antennas.

Plaintiff also introduced evidence to prove that this antenna was a commercial success and that other manufacturers immediately copied it.

Thus, plaintiff's claimed invention is predicated on mechanical novelty, utility and commercial success.

The proof indicates that in 1946 the television antenna business "was just starting" and was "a brand new industry". The early television antennas required the installation man, in assembling the antenna, to resort to loose hardware contained in a bag sold with the antenna. In 1947 the art progressed to the point where the separate bag was no longer required, and the necessary hardware was attached to the antenna components. The prior art also contained instances of collapsible antennas where the elements could be inserted in grooves or brackets and held in place by wing nuts or similar locking devices, as for example in the Fener patent, No. 2,-299,218 dated October 20, 1942 and cited as a reference in the instant patent.

In the allied or analogous art of radio receiving antennas there were two British patents that had foldable antennas with their elements pivotally mounted and with a locking means to hold the elements in position. These patents were also cited as a reference in the instant patent. (British patents Nos. 495,019, dated November 4, 1938, and 248,597, dated March 11, 1926).

This action is governed by the recent revision of Title 35 of the United States

Code, which became effective on January 1, 1953. Act July 19, 1952, Chap. 950, 66 Stat. 792, 35 U.S.C.A. § 1 et seq. Section 101 of the revision, like the old law, provides that an invention is patentable if it is "new and useful". Section 102 defines statutory novelty and states other conditions of patentability. These two sections do not purport to change the law as it existed before the revision, in so far as it related to the requirements of invention and novelty. See Reviser's note to 35 U.S.C.A. §§ 101 and 102. Consequently, we may still look to existing case law on the question of invention.

Section 103 which is a new addition to Title 35 will be discussed below.

This patent is a combination of elements, and the Supreme Court has said with respect to such patents in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly.

"The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability. Toledo Pressed Steel Co. v. Standard Parts, Inc., [307 U.

S. 350, 59 S.Ct. 897, 83 L.Ed. 1334] supra."

Earlier in its opinion the Court said in 340 U.S. at pages 151–152, 71 S.Ct. at page 129:

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, *but this is not a usual result of uniting elements old in mechanics.* This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test." (Emphasis supplied.)

Thus, in the case at bar, after a careful consideration of all the evidence, I fail to find an "invention". The patentee has united elements which were admittedly old in mechanics and which were in fact known to the prior art of television or radio antennas. The instant antenna admittedly created no advance or improvement in the electronic performance or ruggedness of the antenna. It merely made the mechanical improvement of

preassembling the elements onto the "crossbeam", rather than having the installation man insert them into prefabricated grooves or brackets. In either case the installation man was required to lock the elements in place by means of a wing nut or other locking device. Consequently, the patentee has not produced any "unusual or surprising consequences" from the unification of these old mechanical elements, and the patent does not meet the test of invention set forth in the Great Atlantic & Pacific Tea Co. case, supra.

This brings us to Section 103 which has been added to Title 35. This section provides:

"§ 103. Conditions for patentability; non-obvious subject matter

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The Reviser's Note to Title 35 U.S.C.A. § 103 states:

"There is no provision corresponding to the first sentence explicitly stated in the present statutes, but the refusal of patents by the Patent Office, and the holding of patents invalid by the courts, on the ground of lack of. invention or lack of patentable novelty has been followed since at least as early as 1850. This paragraph is added with the view that an explicit statement in the statute may have some stabilizing effect, and also to serve as a basis for the addition at a later time of some criteria which may be worked out.

"The second sentence states that patentability as to this requirement is not to be negatived by the manner in which the invention was made, that is, it is immaterial whether it resulted from long toil and experimentation or from a flash of genius."

Hence, Section 103 is merely a codification of the basic requirement that the subject matter of a patent must have invention and patentable novelty which the section expresses in terms of "obviousness" in view of the "prior art".

Judging the instant patent even by the above standard, it is my opinion that it lacks "invention". In view of what has already been said, it seems plain that the "subject matter as a whole" was "obvious at the time" of the invention "to a person having ordinary skill in the art". This is not a situation where the alleged improvement was seriously needed in the industry, and although desperately sought after, remained undiscovered for a long period of time. Quite the contrary, the industry was but a few years old, and all the mechanical elements for the "invention" were at hand, so that it may reasonably be said that the difference between the subject matter of the patent and the prior art was very small and was obvious to one having ordinary skill in the art.

Defendant is entitled to judgment with costs.

Findings of fact and conclusions of law are being filed simultaneously herewith.