51 CCPA

**Application of Lyman S. ALLEN.**
**Patent Appeal No. 7016.**

United States Court of Customs
and Patent Appeals.
Dec. 12, 1963.

Ellsworth H. Mosher, Stevens, Davis, Miller & Mosher, Washington, D. C., Richard W. Sternberg, St. Louis, Mo., for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The issue in the present appeal requires a determination of whether the differences between the cited prior art and the invention disclosed in appellant's application [1] and claimed in rejected claims 1–19, inclusive, are such that the invention is unpatentable in view of 35 U.S.C. § 103.

The appealed rejection predicated obviousness of the claimed invention on the combined teachings of the following references:

| Di Maio | 2,515,949 | July 18, 1950 |
| Marshall | 2,515,960 | July 18, 1950 |
| Rule I | 2,577,484 | Dec. 4, 1951 |
| Rule II | 2,577,485 | Dec. 4, 1951 |

The invention defined by the appealed claims relates to a process for the production of colloidal dispersions having silica as the disperse phase in water as the liquid dispersion medium. The problem in this art which appellant asserts was solved by his invention appears to have been how to increase the silica content of such dispersions without rendering the dispersion unstable towards gelation. Appellant asserts that by his claimed process such dispersions can be achieved in which the disperse phase is 30% or more by weight of the dispersion and consists of sub-microscopic silica particles (within the size ranges of about 5 to about 150 millimicrons), the dispersion having a stability toward gelation for at least 6 months at storage temperatures ranging from 0°C. up to 35°C., and without any significant settling of the silica particles.

---

1. Serial No. 555,258 filed Dec. 27, 1955 for "Preparation of Sols."

The specific combination of references relied upon to support the rejection was that all the claims were "unpatentable over Di Maio or Marshall in view of the Rule patents."

Appellant's position here as stated in his brief is:

"* * * The appellant's process is unobvious in that it enables the production of valuable end products (stable aquasols of 30% silica content) not heretofore obtainable by processes using a raw or starting material of the nature employed by appellant, which process is in no way taught by, suggested, or even likely to be discovered from the prior art. * * *"

In reaching the ultimate judgment as to obviousness required by section 103, we must analyze the record to determine factually what constitutes the "subject matter as a whole" and the "differences" between it and the prior art. We shall start this analysis by first considering the rejected claims.[2]

The 19 rejected claims are each directed to "a process of producing stable, alkaline silica aquasols of high silica concentration" which are further specified in the claims as "containing about 30% by weight and more of silica" (cl. 1–6) or "colloidal silica" (cl. 7–19). Ex-

cept for specifying a control of the salt content of the materials within the claimed limits of 0.025% (cl. 1–6 and 12–15) or "less than 0.01%" (cl. 7–11 and 16–19) the claimed process steps per se are those of the Marshall or Di Maio references.

The position of the board was summarized in its opinion as follows:

"* * * While concededly both Di Maio and Marshall disclose the use of acid-reacting organo aquasols as the initial material containing more than 0.025% by weight of sodium sulfate * * *[3], we agree with the examiner that the reduction in the amount of salt in the acidic hyro-organosol to the degree as claimed would be obvious, particularly in view of the Rule patents in which substantially salt free aquasols are taught for the production of basic aquasols of high concentration and good stability. * * *"

The specification of the appealed application discusses the Di Maio and Marshall references and states specifically as to Di Maio:

"* * * While the process described in such patent is suitable for producing stable alkaline silica aquasols containing about 15 to 20% by weight of silica, the subsequent

---

2. Claim 1 is considered to be representative of the rejected claims and reads as follows:

"1. A process of producing stable, alkaline silica aquasols of high silica concentration which comprises admixing an acidic silica hydro-organosol containing water, from about 4 to about 12% by weight of silica as silicic acid, from about 25 to about 60% by weight of a substantially neutral, water-miscible organic liquid consisting of carbon, hydrogen and oxygen atoms and having a boiling point below that of water at atmospheric pressure and less than 0.025% by weight of a salt contaminant, with an alkaline aqueous solution containing a low concentration of an alkaline alkali metal compound selected from the group consisting of alkali metal hydroxides and alkali metal silicates, distilling said organic liquid from the resulting sol and subsequently evaporating sufficient water to provide

an aquasol containing about 30% by weight and more of silica, said hydro-organosol and alkaline aqueous solution being employed in quantities to provide a final sol having a pH within the range of about 9.0 to about 10.7."

3. The opinion here refers to Example 1 "of Marshall as originally presented" as showing a sodium sulfate content of 0.01%. This appears to have been predicated on a printing error in the patent. In its decision on petition for reconsideration the board stated:

"* * * our conclusions were not based upon the interpretation of Marshall as originally and erroneously printed, but upon the combination with the teachings in the Rule patents."

We take this to mean that the essence of the rejection is as we have quoted it in the text above.

concentrating of such sols to a silica content of 25% by weight by the evaporation of water results in a sol having rather limited stability to gelation. Usually such sols will gel within a period of one month at normal storage temperatures, and this period of stability toward gelation is not sufficient for commercially saleable sols which are often stored for periods of 6 months or longer prior to use. Moreover, there is a distinct need in commerce for alkaline silica aquasols containing 30% or more of silica."

As to the Marshall reference, the specification states:

"* * * In accordance with the teachings of this patent it is possible to obtain silica sols containing 20–25% by weight of $SiO_2$ which are stable toward gelation for practical periods of time. However, if such sols are concentrated to a 30% by weight or higher silica concentration by evaporation of water the sols are not stable toward gelation for practical periods of time, and hence the 30% silica sols produced by the process of this patent are not generally satisfactory for commercial sale."

The specification also states:

"The present invention is based on the discovery that stable, alkaline silica aquasols containing about 30% by weight or more of colloidal silica can be prepared from acidic silica hydro-organosols by a process which involves alkalizing the hydro-organosol and removing the organic liquid therein by heating, followed by removal of a portion of the water from the sol by evaporation, provided that the acidic silica hydro-organosol used is free or substantially free of salts."

Thus we see that appellant's process is essentially an improvement on the prior Di Maio and Marshall processes and that a novel critical feature of appellant's process is asserted to reside in the proviso above quoted, i. e., "that the acidic silica hydro-organosol used is free or substantially free of salts."

At this point we turn in our analysis to the Rule patents to determine what they teach the art. It is appellant's position as stated in his brief that the board was "overgenerous in its interpretation of the Rule patents," and that:

"* * * While it is true that the Rule patents do teach *specific and special* processes for the production of basic aquasols of high concentration and good stability from salt-free aquasols, it is submitted that the Rule patents do not teach that such basic aquasols can be produced from any silica starting or raw material or by any general technique or any sequence of manipulative steps.
* * *

* * * * * *

"It has already been pointed out in the discussion of the Rule I and Rule II references in this Brief that these Rule patents are improvements over the process of the Bechtold et al patent * * * in regard to the preparation of high purity aquasols, and that the Bechtold et al process results in stable aquasols of at least 35% silica concentration *without* the removal of salt contaminants using commercial sodium silicates, with anion contaminants, as the basic raw material. * * *"

The solicitor, however, states in his brief:

"The contention that the Rule patents do not suggest or teach that salt reduction is employed to produce stable aquasols of high concentration * * * is inaccurate. The title of each patent contains the expression 'Stable Silica Sols'. One of the objects clearly stressed in each patent is to provide processes whereby 'silica sols of high purity and stability can be made' * * *. This is particularly pointed out in connection with sols containing 'up-

wards of 35% SiO₂' in the first paragraph of the Rule II specification * * *."

After charging that appellant "has misleadingly misinterpreted the Rule patents" the solicitor further states:

"* * * Thus, he [appellant] states * * * that Rule I in Example I treats a commercial sodium silicate solution with a cation exchanger and 'provides a starting aquasol raw material containing *appreciable* amounts of sulfate and chloride ions'. But, the same Example I goes on to state that the impure silica acid solution thus formed was then passed through an anion exchanger to remove the chloride and sulfate ions (as hydrochloric and sulfuric acids), thus providing a substantially salt-free starting material. Then, appellant erroneously * * * refers to Rule II as teaching that deionization (salt removal) of an aquasol to a high degree renders the aquasol comparatively unstable at high concentration. However, this refers to statements in Rule II * * relating to two abandoned applications by a third party and has no relation whatsoever to the process disclosed in the Rule II patent."

This disagreement requires us to determine from the Rule patents themselves which view should be adopted here. Rule I clearly discloses the addition of a substantially salt-free sol of active silica to "a substantially salt-free silica sol of substantially spherical, unaggregated, dense particles." In so doing Rule I states:

"By the operation of a process of this invention as just described there may be produced *silica sols which are stable even when concentrated to upwards of 35% SiO₂,* at SiO₂:M₂O ratios of 130:1 to 500:1, and the processes including such a concentration step constitute a preferred embodiment of the invention. The sols produced may have a silica content of, say, 40 or 45% by weight at these ratios. Such sols may advantageously be prepared according to this invention from cheap, readily available grades of commercial sodium silicate solution. *The processes, in a preferred aspect, employ ion-exchange methods for removing unwanted ions to make the salt-free, active-silica sols,* and may do so with a minimum of handling of the sols and of plant investment." [Emphasis added.]

Rule II states:

"This invention relates to novel *silica sols* and methods for making them. More particularly, the invention is concerned with sols *which are stable, even when concentrated to upwards of 35% SiO₂,* by reason of the fact that they contain amorphous silica particles which are dense, nonagglomerated, spherical and 10 to 130 millimicrons in diameter, and *that they are substantially salt-free* and contain enough alkali metal hydroxide to give a silica: alkali mole ratio from 130:1 to 500:1. * * *" [Emphasis added.]

While we recognize the differences urged by appellant between the processes of Rule I and II and appellant's process, it was not this comparison which the examiner and the board relied upon in finding appellant's process to be obvious. As we understand the position of the Patent Office it is that the claimed process is old in Di Maio or Marshall except for the use of the salt-free or substantially salt-free materials claimed by appellant. Rule I and II were used to show what was within the knowledge of one of ordinary skill in this art concerning salt-free or substantially salt-free silica sols having 35 % and upwards of silica oxide.

We therefore find it unnecessary to compare the processes of Rules I and II with the process of appellant's claims.

The processes of the primary and secondary references seem to us to be both analogous and comparable. One skilled in this art is taught by these references to substitute sodium silicate

for the hydroxides of the primary references, as the alkalizing material. The consequent advantages asserted by the appellant, that such silicate introduces a portion of the silica in the final product, would seem to be obvious.

Appellant's argument based on the alleged discovery of a defect in the processes of the primary references and the correction of this defect by salt reduction of the hydro-organosol starting material to produce stable aquasols of 30% or more silica content is not in point. Salt reduction in the production of stable colloidal suspensions of high silica content was taught by the Rule patents as above pointed out. While appellant's arguments imply that there may have been an unsolved problem in the art, an allegation to this effect is not evidence of unobviousness unless it is shown, as was not done here, that the widespread efforts of skilled workers having knowledge of the prior art had failed to find a solution to the problem. See Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334, (1939).

We therefore affirm the rejection of claims 1–5, 7, 9 and 10.

Appellant asserts that even if the above claims be found unpatentable his use of sodium (or alkali metal) silicates with hydro-organosols as called for in claims 6, 8 and 11 through 19 is not disclosed in the art and the manipulative steps of adding acid hydro-organosols and sodium silicate below the surface of the boiling sol, as in claims 16 through 19, are not disclosed in the art.

While the Board of Appeals in affirming the examiner's rejection did not specifically discuss the above stated rejection of claims 6, 8 and 11 through 19 on the Rule II disclosure relating to the use of alkali metal silicates, the general affirmance by the board goes to all stated grounds of rejection. In re Wagenhorst, 64 F.2d 780, 20 CCPA 991; In re Rubinfield, 270 F.2d 391, 47 CCPA 701.

Appellant stated his position as to the use of sodium (or alkali metal) silicates

as called for in claims 6, 8 and 11 through 19, in the amendment of April 11, 1958. Here appellant referred to his use of alkali metal silicates but made no reference to allowability of the claims by reason of the manipulative steps specified in claims 16 through 19. In response to this amendment, the examiner repeated the prior rejections which disposed of all the claims without considering the issues here raised by appellant as to claims 6, 8 and 11 through 19.

In appellant's brief on appeal to the board, appellant argued the allowability of claims 6, 8 and 11 through 19 over the Rule patents by reason of the limitation in the claims to alkali metal silicates. We note, however, that appellant again failed to assert patentability on the basis of the manipulative steps now asserted as to claims 16 through 19. The examiner's answer of June 2, 1940 stated:

"Appellant further contends the Rule patents do not describe the use of alkali metal silicates. This assertion also appears to be in error. See Rule II, column 9, lines 63–68."

The portion of Rule II referred to by the examiner reads:

"It will be understood that the addition of an alkali metal oxide or a soluble alkali metal silicate is the equivalent of adding an alkali metal hydroxide because as soon as the oxide or silicate makes contact with the aqueous silica sol it forms the hydroxide. * * * "

We agree with the examiner that the use of an alkali metal silicate, such as sodium silicate instead of sodium hydroxide, as the alkaline aqueous solution in the alkalizing step, would be an obvious expedient, in view of the above teaching in Rule II that "a soluble alkali metal silicate is the equivalent of adding an alkali metal hydroxide."

No reason has been advanced why the examiner or the board should have acted specifically on the manipulative steps of adding acid hydro-organosols and sodium silicate below the surface of the boiling sol as claimed in claims 16

through 19 since this feature apparently was not urged by appellant as a basis for patentability either before the examiner or the Board of Appeals. From the record here, it appears that this argument was put forward by appellant for the first time in this court. The failure of appellant to have advanced this argument before the examiner and the board precludes raising it for the first time here.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.