972 F.2d 1354
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Hans NETTEL.
 No. 91-1398.
 United States Court of Appeals, Federal Circuit.
 June 10, 1992.
 
 Before ARCHER, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Hans Nettel appeals the October 31, 1991 decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (Board), as supplemented by two reconsideration decisions, affirming the rejection of claims 1-4 and 6 in the reexamination of Nettel's U.S. Patent 4,823,411, entitled "CLEANOUT EXTENSION ADAPTOR," as unpatentable under 35 U.S.C. § 103. We affirm.
 
 DISCUSSION
 
 2
 Nettel's '411 patent relates to a plastic cleanout extension adaptor and method of inserting it in the end of a plastic sewer pipe to mount flush with the surrounding surface of a cement floor or wall construction. Claim 1 provides:
 
 
 3
 1. A cleanout extension adaptor for use in the flush mounting of a cleanout extension comprising:
 
 
 4
 a cylindrical body having an axial throughbore and an external diameter that is slightly less than the internal diameter of the cleanout extension;
 
 
 5
 a radially outwardly extending lip on the top of said cylindrical body for extending over and engaging the top edge of said cleanout extension for positioning and supporting the cleanout adaptor in position when inserted in said cleanout extension;
 
 
 6
 means for affixing said cleanout extension adaptor to the interior of said cleanout extension; and
 
 
 7
 means on the interior of said cleanout extension adaptor for seating a sealing plug so that said sealing plug is substantially even with the area surrounding the top of the cleanout extension.
 
 
 8
 The only other independent claim on appeal, claim 6, is a method claim setting forth the steps of installing a cleanout extension adaptor so that the top of the sealing plug is substantially level with the surrounding surface:
 
 
 9
 6. The method of installing and sealing a cleanout extension so that it is substantially even with the surrounding surface without disturbing the surrounding surface, comprising the steps of:
 
 
 10
 cutting the cleanout extension to a height that is substantially level with the surrounding surface;
 
 
 11
 selecting and mounting an adaptor in the top portion of said cleanout extension to receive a sealing plug within the confines of said cleanout extension;
 
 
 12
 selecting said adaptor to have a generally tubular configuration with an internal threaded bore and an outer diameter to fit within the bore of the cleanout extension and to have an outwardly extending lip for engaging and overlapping the cut end of the cleanout extension for providing a finish to said cut end and for positioning and supporting said adaptor; and
 
 
 13
 inserting a threaded sealing plug into the cleanout extension so that the top of the sealing plug is substantially level with the surround [sic, surrounding] surface.
 
 
 14
 The principal problem addressed in the '411 patent is the inconvenience of the conventional approach to installing and closing the end of a cleanout extension pipe, which involves breaking out the hardened cement floor or wall surface around the end of the extension, attaching a cap, and then restoring the floor surrounding the extension.
 
 
 15
 The Board affirmed the examiner's rejection of claims 1, 2, 4, and 6 as unpatentable under 35 U.S.C. § 103 over Terry U.S. Patent 3,343,704 in view of Panella U.S. Patent 3,148,708.[1] Terry relates to an electrical outlet box structure in which a cylindrical portion of the box extends above the floor level and is then cut to floor level after cement is poured, so that the receptacle holder can be inserted parallel to and flush with the floor surface. Panella discloses a cleanout plug assembly which may be inserted either temporarily or permanently into a sewer cleanout pipe for closing and sealing the pipe.
 
 
 16
 Nettel challenges the Board's conclusion that the appealed claims would have been obvious in view of the combined teachings of the prior art, asserting that "it would not have been obvious to a plumber to take the electrical outlet assembly of Terry and insert it into Panella's sewer cleanout pipe to thereby obtain the invention of Claims 1, 2, 4, and 6." To the extent that Nettel argues that Terry is nonanalogous art, we agree with the Board that the problems addressed in Terry and the '411 patent are the same, viz., problems of conduit installation. As the Board stated:
 
 
 17
 In both the electrical and plumbing fields of endeavor, it is apparent that there is a common concern for positioning conduit below ground level or within a concrete slab and providing access thereto from above. Particularly with regard to concrete slab construction, it is conventional for both plumbers and electricians to position the necessary conduit prior to the pouring of the concrete slab, and this is done practically simultaneously and certainly in close proximity.
 
 
 18
 The problem faced by Nettel was the conventional installation of cleanout extensions which required breaking out the floor surface around the end of the extension after the setting of cement, installing an external closure cap on the extension, and then restoring the floor. The same problem of flush-mounting a plastic extension pipe and closure in a cement or concrete floor had been recognized and solved in the context of an electrical system in Terry, in which junction boxes and extensions were installed in cement or concrete floors. We agree with the Board that the teaching of Terry is analogous, and that it has been properly combined with Panella so that the inventions of Claims 1, 2, 4, and 6 would have been obvious to one skilled in the art of building construction.
 
 
 19
 Nettel also argues that Terry did not make the claimed invention obvious because Terry uses metal and not plastic, and it does not have the "means for affixing" of claim 1. Nettel also asserts that Terry lacks internal threads on ring 14a as required by claim 2, and that ring 14a is not tubular. Finally, Nettel argues that Terry is a temporary installation and would not seal a sewer pipe, which is the intended purpose of Nettel's patent.
 
 
 20
 Even given these distinctions, the Board held that Nettel's claimed invention would have been obvious. After reviewing the record, we agree that both Terry and Panella show that it was known in the relevant art to install a seal or cover device to a conduit extension which initially extends above the surface but is subsequently cut off at grade, after which an adaptor is installed internally within the end of the conduit such that it is substantially flush with the surface.[2]
 
 
 21
 Nettel argues that even if we affirm the Board's holding of prima facie obviousness, the Rule 132 declarations submitted by White, Lindvall (I), Nettel, and Lindvall (II) rebut the Board's prima facie case. Nettel asserts that the affidavits demonstrate (1) long-felt need, (2) failure of others, (3) commercial success, (4) copying of others, and (5) licensing of Nettel's patent. Each of these assertions lacks merit.
 
 
 22
 With respect to long-felt need, Nettel asserts that prior to his invention, "there did not exist a device or product that would permit a cleanout extension pipe to be flush mounted with the surrounding building surface according to claim 6." White and Lindvall state that "[p]rior to the introduction of the TOM-KAP cleanout extension adaptor into the market in approximately 1983, there was no commercially available product that would permit a plumber to mount and seal the terminal end of a cleanout extension pipe flush with a surrounding building surface at the time finish work was done....; it was necessary for plumbers to estimate the ... position for the conventional cleanout fitting [which was inaccurate and caused expensive repair]." We agree with the Board that these statements of long-felt need are mere conclusions without any supporting factual evidence. Just because an invention did not exist before does not necessarily mean that there was a need that was long felt. Nettel asserts that prior to his invention, plumbing contractors had "a long-felt need for a way to seal a cleanout extension pipe even with the floor," and that the prior art patents to Panella, Fuller, Spool, and Titus are examples of the failure of others. We have reviewed these references and the affidavit statements and see nothing to establish "that the widespread efforts of skilled workers having knowledge of the prior art had failed to find a solution to the problem." In re Allen, 324 F.2d 993, 997, 139 USPQ 492, 495 (CCPA 1963).
 
 
 23
 With respect to commercial success, Nettel submitted Exhibit F, which shows that 463,007 "TOM-KAP" cleanout extension adapters were sold over a five-year period. Nettel asserts that the TOM-KAP adapters are of the type covered by claim 1 and the use of which is covered by claim 6. The Board found that the claimed subject matter is broader in scope than the evidence of commercial success offered in the Rule 132 declarations and there is no basis to infer that such success would likely extend to the full scope of the claim. The Board also found that there is no nexus between the asserted evidence of commercial success of Nettel's product and the method recited in claim 6. We agree.
 
 
 24
 Evidence of sales of the product is not evidence of commercial success of the method. There is no evidence that the adapters Nettel sold would only be used according to the method of claim 6. Moreover, Nettel's sales summary in this case has little meaning if there is no evidence as to the size of the market. See In re Mageli, 470 F.2d 1380, 1384, 176 USPQ 305, 308 (CCPA 1973) (sales list alone does not establish the proper nexus, because sales could have resulted for reasons unrelated to the merits of the invention (e.g., aggressive sales campaign, price cutting)). The commercial success of Nettel's adaptor may have been attributable to the "thin lip" of its TOM-KAP, a limitation not in the appealed claims. In fact, Claims 5 and 7 of Nettel's '411 patent, which have the thin lip limitation, have been allowed.
 
 
 25
 Nettel also asserts that copying or licensing of his claimed invention by others rebuts the prima facie case. We have reviewed the record and agree with the Board that Nettel failed to show a proper nexus between the "copied" and licensed devices on the one hand and the claims on the other.
 
 
 26
 We have considered all of Nettel's other arguments and do not find them persuasive.
 
 
 
 [1]
 The examiner additionally found claims 1 and 2 anticipated by Terry. In view of our disposition on obviousness, we need not address these findings
 
 
 [2]
 We also agree with the Board's affirmance of the examiner's rejection of Claim 3, because one of ordinary skill in the art would have found it obvious to taper the bottom of the cylindrical structure of Terry, as suggested by Sharp (U.S. Patent 1,945,707), to provide more efficient movement of wires or fishtape